**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRIS J. SPERA, individually and on behalf of a class of similarly situated individuals, | Case No.: 1:19-cv-04873 |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| D & A SERVICES, LLC., doing business as D & A Services; THE BUREAUS, INC. and BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC, and BUREAUS INVESTMENT GROUP III, LLC, | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

NOW COMES Plaintiff, CHRIS J. SPERA, individually and on behalf of a class of similarly situated individuals ("Plaintiff"), by and through his attorney James C. Vlahakis, and pursuant to Federal Rule of Civil Procedure 23, the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq., the Colorado Fair Debt Collection Practices Act, Colo. Rev. Stat. § 12-14-101, *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq., asserts the following putative Class Action Complaint against Defendants D & A SERVICES, INC., doing business as D & A Services, THE BUREAUS, LLC, BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC and BUREAUS INVESTMENT GROUP III, LLC.

### I.    Parties, Federal Jurisdiction, Venue and Supplemental Jurisdiction

1.    Plaintiff resides in and is a citizen of the State of Colorado.

2.    Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1337, as this action arises under Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA").

3.     This civil action relates to a consumer debt Plaintiff incurred in relation to his purchase of a Polaris All-Terrain Vehicle (hereafter the "Subject Debt").

4.     Plaintiff is a "consumer" as defined by § 1692a(3) of the FDCPA because the Subject Debt was for Plaintiff's personal use.

5.     Plaintiff defaulted on the Subject Debt and the Subject Debt was eventually sold by the original creditor or the original creditor's successor.

6.     Prior to the sale of the Subject Debt, the original creditor or the original creditor's successor stopped charging interest and waived the right for any subsequent purchaser of the Subject Debt to charge interest.

7.     Defendant D & A SERVICES, LLC, doing business as D & A Services ("D&A"), is an active Illinois Limited Liability Company with a principal place of business at 1400 E. Touhy Ave, Suite G2, Des Plaines, Illinois.

8.     D&A is "debt collector" as defined by 15 U.S.C. § 1692a(6) because D&A's principal purpose is the collection of debts and because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

9.     In an attempt collect the Subject Debt, D&A caused a collection letter dated July 2, 2018 (the "Collection Letter") to mailed to Plaintiff's address in Fowler, Colorado.

10.     The Collection Letter listed a "Current Balance" of $12,189.75.

11.     The purported Current Balance of $12,189.75 was not the amount owed by Plaintiff because this amount included interest that was improperly added by one or more of the following: (a) debt purchaser; (b) D&A; (c) a prior debt collector; or (d) a combination of the three.

12.     As discussed below, the inclusion of interest on top of the charged off debt constitutes a violation of Sections 1692e and f of the FDCPA.

13.     On July 26, 2018, Plaintiff emailed D&A and disputed the Subject Debt and asked that D&A validate the Subject Debt.

14.     In August of 2018, D&A responded to Plaintiff's dispute and validation request.

15.     As discussed below, D&A's response incorrectly confirmed the amount of the Subject Debt.

16.     Defendant THE BUREAUS, Inc. ("The Bureaus") is an Illinois corporation, with a business address of 650 Dundee RD #370 Northbrook, Illinois 60062.

17.     The Bureaus is in the business purchasing defaulted debts where the debt was in default at the time it was sold by a prior creditor.

18.     The Bureaus is in the business of servicing defaulted debts where the debt was in default at the time it was sold by a prior creditor.

19.     Defendant BUREAUS INVESTMENT GROUP III, LLC (at times "BIG-III"), is an active Illinois Limited Liability Company with a principal place of business at 650 Dundee RD #370 Northbrook, Illinois 60062.

20.     BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC ("PORTFOLIO NO 15 LLC") is an active Illinois Limited Liability Company with a principal place of business at 650 Dundee RD #370 Northbrook, Illinois 60062.

21.     D&A identified PORTFOLIO NO 15 LLC as the current creditor of the Subject Debt.

22.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391 because as to the D&A Related Defendants, their state of incorporation and principal place of business is located in this District.

23.     Further, on information and belief, on or more of the D&A Related Defendants received funds from Plaintiff towards the subject debt in this District and

upon information and belief, one or more of the D&A Related Defendants deposited said funds into a bank account within this District.

24.     A substantial part of the events giving rise to this civil action took place within this Judicial District.

25.     For examples, employees of D&A working within this district worked on computerized debt collection operating software that caused the subject collection letter and hundreds of similar form letters to be transmitted from this District to Plaintiff and other consumers.

26.     Alternatively, on information and belief, an employee of D&A responded to Plaintiff's request for validation completed his/her response from an office based within this District.

27.     Supplemental jurisdiction exists for Plaintiff's Illinois state law claims common law fraud and for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

28.     Supplemental jurisdiction exists for Plaintiff's Colorado state law claims common law fraud and for violations of the Colorado Fair Debt Collection Practices Act, Colo. Rev. Stat. § 12-14-101, *et seq.*

**II.     Additional Background Facts**

29.     The Illinois Sec. of State assigned D&A with File No. 01817817 and its registered agent is Chadwick I. Buttell, 200 S Wacker DR STE 2700, Chicago, IL 60606.

30.     Dynia and Associates has used D&A as an assumed name.

31.     On information and belief, Dynia and Associates used D&A as an assumed name in or around July and August of 2018.

32.     On information and belief, as of the date of D&A's answer to this Complaint, Dynia and Associates is using still using D&A as an assumed name

4

33. Anthony Crews, of Addison, Illinois, a manager of D&A.

34. Anthony Crews is the president D&A and was so since at least 2019.

35. Michael Prowicz, of Hampshire, Illinois, is a manager of D&A.

36. The Illinois Sec. of State assigned The Bureaus with File No. 50385078.

37. Aristotle Sangalang is the president, chief compliance officer and agent of The Bureaus, and can be served at 650 Dundee RD #370 Northbrook, Illinois 60062.

38. Michael Slotky is listed as the agent for BIG-III at 650 Dundee RD #370 Northbrook, Illinois 60062 and is its sole manager.

39. BIG-III was formed on or about October 22, 2007.

40. The Illinois Secretary of State has assigned BIG-III with File No. 02371014.

41. BIG-III is currently the sole manager of PORTFOLIO NO 15 LLC.

42. BIG-III was the manager PORTFOLIO NO 15 LLC in July and August of 2018.

43. PORTFOLIO NO 15 LLC was formed on or about March 11, 2008 and the Illinois Sec. of State has assigned PORTFOLIO NO 15 LLC with File No. 02456621.

## III. Background Facts - the Formation and Default of the Subject Debt

44. HSBC Bank Nevada, N.A. ("HSBC") was the original creditor for the Subject Debt.

45. The account number for the Subject Debt is XXXXXXXXXX2802.

46. The Subject Debt was governed by a Cardholder Agreement and Disclosure Statement ("Cardholder Agreement") that was entered into by Plaintiff and HSBC.

47. After Plaintiff purchased the Subject Debt, he suffered a personal hardship that caused him to default on the Subject Debt.

48. Before Plaintiff defaulted on the Subject Debt, it accrued interest and late fees pursuant to the applicable Cardholder Agreement between Plaintiff and HSBC.

49.     The Subject Debt was charged off sometime in October or November of 2017.

50.     Prior to the Subject Debt being charged off, HSBC charged interest on the Subject Debt at an Annual Percentage Rate ("APR") of 24.99%.

## IV. HSBC and/or Capital One Retail Card Services, Inc. Waived Interest on the Subject Debt

51.     In 2017, it was HSBC's standard policy and procedure to stop adding interest to accounts as of the date that it charged off debts.

52.     Upon information and belief, at the time that the Subject Debt was in default, HSBC owned the Subject Debt.

53.     And after the Subject Debt was in default, HSBC voluntarily stopped adding interest to the Subject Debt.

54.     While HSBC owned the Subject Debt it intentionally acted in a manner inconsistent with any right HSBC may have had to add interest to the Subject Debt when the Subject Debt was in a default status.

55.     Upon information and good faith belief, HSBC voluntarily stopped sending periodic statements in connection with the Subject Debt as of the date that it charged off the Subject Debt.

56.     As of the date that HSBC charged off the Subject Debt, HSBC waived any contractual right that it may have had to add interest to the Subject Debt.

57.     As of the date that HSBC charged off the Subject Debt, HSBC waived any statutory right that it may have had to add interest to the Subject Debt.

58.     After charging off the Subject Debt, HSBC transferred the Subject Debt to Capital One Retail Card Services, Inc. (the "Capital One").

59.     Alternatively, after HSBC charged off the Subject Debt, Capital One acquired the Subject Debt.

60.     Prior to the Subject Debt being purchased by one of the Defendants, HSBC waived any contractual right that it may have had to charge interest on the Subject Debt.

61.     Prior to the Subject Debt being purchased by one of the Defendants, HSBC waived any statutory right that it may have had to charge interest on the Subject Debt.

62.     When Capital One purchased or acquired the Subject Debt, the Subject Debt was in default.

63.     After Capital One purchased and/or acquired the Subject Debt, it never charged interest on the Subject Debt.

64.     Prior to the Subject Debt being sold by Capital One to the current listed creditor, Bureaus Investment Group Portfolio NO 15 LLC ("Bureaus"), Capital One waived any contractual right that it may have had to charge interest on the Subject Debt.

65.     Prior to the Subject Debt being sold by Capital One to Bureaus, Capital One waived any statutory right that it may have had to charge interest on the Subject Debt.

66.     Prior to the Subject Debt being purchased by one of the Defendants, Capital One waived any contractual right that it may have had to charge interest on the Subject Debt.

67.     Prior to the Subject Debt being purchased by one of the Defendants, Capital One waived any statutory right that it may have had to charge interest on the Subject Debt.

68.     As discussed below, Defendant D&A violated the FDCPA and the Colorado Fair Debt Collection Practices Act by attempting to collect inters that was added to the Subject Debt after the debt was sold by the original creditor, HSBC.

69.    Alternatively, Defendant D&A violated the FDCPA and the Colorado Fair Debt Collection Practices Act by attempting to collect interest that was added to the Subject Debt after the debt was sold by Capital One.

70.    Alternatively, Defendant BIG-III and/OR PORTFOLIO NO 15 LLC violated Colorado law improperly adding interest to the subject Debt.

71.    Alternatively, Defendant The Bureaus violated Colorado law improperly adding interest to the subject Debt.

**V.    The Acquisition and Sale of Subject Debt**

72.    On information and belief, in October or November 2012, Capital One, National Association acquired the Subject Debt from HSBC.

73.    To the extent Capital One, National Association purchased or otherwise acquired the Subject Debt from HSBC or Capital One, Capital One, National Association waived any statutory right that it may have had to charge interest on the Subject Debt.

74.    To the extent Capital One, National Association purchased or otherwise acquired the Subject Debt from HSBC or Capital One, Capital One, National Association waived any contractual right that it may have had to charge interest on the Subject Debt.

75.    BIG-III purportedly purchased the Subject Debt from "Capital One, National Association", as part of the sale of "a pool of charged-off accounts (the Accounts) by a Purchase and Sale agreement and Bill of Sale."

76.    An "AFFIDAVIT OF SALE OF ACCOUNT" dated March 5, 2013, was signed on behalf of Capital One by John H. Maurer, listed as "a Vice President of Capital One, National Association."

77.    The AFFIDAVIT OF SALE OF ACCOUNT, states that BIG-III purchased the Subject Debt from Capital One, National Association on or about November 13, 2012.

8

78.     Plaintiff does not allege that this representation set forth in the AFFIDAVIT OF SALE OF ACCOUNT is accurate and in no way vouches for the authenticity of the above representation.

79.     On information and belief, in or around November of 2012, The Bureaus acquired the Subject Debt from BIG-III.

80.     Alternatively, on information and belief, in or around November of 2012, The Bureaus serviced the Subject Debt on behalf of BIG-III.

81.     Sometime prior to January 21, 2015, BIG-III sold the Subject Debt to PORTFOLIO NO 15 LLC.

82.     Alternatively, prior to January 21, 2015, The Bureaus acquired and then sold the Subject Debt to PORTFOLIO NO 15 LLC.

83.     Alternatively, prior to January 21, 2015, The Bureaus, on behalf of BIG-III, sold the Subject Debt to PORTFOLIO NO 15 LLC.

84.     PORTFOLIO NO 15 LLC owned the Subject Debt on July 2, 2018, which is the purported transmission date of the subject collection letter.

85.     PORTFOLIO NO 15 LLC owned the Subject Debt in August of 2018, when D&A responded to Plaintiff's request for validation of the Subject Debt.

86.     PORTFOLIO NO 15 LLC owned the Subject Debt as of the filing of this Complaint.

87.     PORTFOLIO NO 15 LLC owns the Subject Debt as of the date of its answer.

**IV.     Credit Reporting of the Subject Debt.**

88.     In November of 2012, the Subject Debt was being reported by Equifax, Experian and TransUnion (the "Three CRAs") as involving a defaulted amount of $9,000.

89.     In November of 2012, the Subject Debt was being reported by the Three CRAs as bad debt.

90. In November of 2012, the Subject Debt was being reported by the Three CRAs as having been placed for collection.

91. In November of 2012, the Subject Debt was being reported by the Three CRAs as having been purchased.

92. In November of 2012, The Bureaus reported the existence of the Subject Debt the Three CRAs.

93. When The Bureaus reported the Subject Debt to the Three CRAs in November of 2012, The Bureaus identified a current balance of $9,106.

94. In December of 2014, The Bureaus reported the existence of the Subject Debt the Three CRAs.

95. When The Bureaus reported the Subject Debt to the Three CRAs in December of 2014, The Bureaus identified a current balance of $11,255.

**VI.     D&A's Transmission of the Collection Letter to Plaintiff**

96. D&A attempted to collect the Subject Debt from Plaintiff by way of a letter dated July 2, 2018 (the "Collection Letter").

97. The Collection Letter listed Plaintiff's address in Fowler, Colorado.

98. Immediate Mailing Services, Inc. ("IMS") is responsible for generating and sending letters to consumers on D&A's behalf.

99. IMS maintains records of all letters that it has transmitted for D&A.

100. IMS has been D&A's letter vendor for at least 8 years.

101. D&A used IMS to mail the Collection Letter to Plaintiff.

102. On information and belief, the Collection Letter was not mailed to Plaintiff's address on July 2, 2018.

103. Below is an accurate image of the front page of the Collection Letter:



104.   The Collection Letter listed "CAPITAL ONE RETAIL CARD SERVICES, INC."
(at times "Capital One") as the "Original Creditor" and "BUREAUS INVESTMENT GROUP
PORTFOLIO NO 15 LLC" as the "Current Creditor."

11

105.    The Collection Letter listed a "Current Balance" of $12,189.75.

106.    Instead, on information and belief, consistent with industry standards, the Collection Letter was mailed out several days after it was printed by IMS.

107.    Additionally, the July 4th 2018, Holiday fell on a Wednesday, which likely impacted the mailing date and delivery time for the Collection Letter.

108.    To the best of Plaintiff's knowledge, information and belief, the Collection Letter reached Plaintiff's mail box approximately two weeks after its purported date of July 2, 2018.

**VII.    Plaintiff Disputed and Sought Validation of the Subject Debt**

109.    To the best of Plaintiff's knowledge, information and belief, he opened the Collection Letter the same day that he received it as his address in Fowler, Colorado.

110.    A day or two after Plaintiff opened the Collection Letter, he sent an email to D&A to dispute the Subject Debt and seek validation of the Subject Debt.

111.    Plaintiff's July 26, 2018 email to D&A said the following:

> I am disputing this debt
>
> Colorado state law requires you to provide the information  I am requesting. Verify this debt with the chain of assignment going back to the original creditor (Capital One is not the original creditor). Provide a signed contract with the original creditor and provide the payment history dating back to the 1st payment made.
>
> The last payment made will not due, the first cause of action is the first payment past due.
>
> You will also need to identify yourself as either the Debt Buyer or Collection agency and provide proof of being licensed in the state of Colorado. Date of request is 7/26/20018[.]

112.    On August 13, 2018, at 6:57 a.m. Mountain Time, a "Client Services Supervisor" emailed Plaintiff from an "@dnasllc.com" email address.

113.    D&A's August 13, 2018, email said "Please see attached validation letter. Thanks".

114. D&A's August 13, 2018, email did not identify D&A's Colorado Office.

115. Instead, D&A's August 13, 2018, email identified D&A Services and listed an address of 1400 E. Touhy Ave, Suite G2, Des Plaines, Illinois along with a telephone number associated with a 773 area code.

116. The letter attached to D&A's August 13, 2018, email was dated August 13, 2018.

117. D&A's August 13, 2018, letter identified D&A Services.

118. D&A's August 13, 2018, letter did not identify D&A's Colorado Office.

119. Instead, D&A's August 13, 2018, letter listed an address of 1400 E. Touhy Ave, Suite G2, Des Plaines, Illinois along with a telephone number associated with a 773 area code.

120. The August 13, 2018, letter did identify "our client" by name.

121. The subject line of the letter attached to D&A's August 13, 2018, email included the following information:

> Re:
> Current creditor: BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC
> Original creditor: CAPITAL ONE RETAIL CARD SERVICES, INC.
> Reference #: XXXXXXXXXXXX2802
> Debt Balance: $12,169.75
> D&A #: 5522968

122. The body of D&A's August 13, 2018, letter said the following:

> To Whom It May Concern:
>
> This letter is in response to your request for validation of debt that we received on 07/25/2018. We forwarded your request to our client and they have sent us the following documents:
> • Charge-Off
>
> If you have any questions, please contact our office.
> Encl
>
> Regards,
> D & A Services

123. The following is a true an accurate image of D&A's August 13, 2018, letter:

**D & A Services**
1400 E. Touhy Avenue, Suite G2
Des Plaines, Illinois 60018

Toll Free: 800-268-0514
Web: http://www.dnasllc.com
Hours of Operations: M-Th 8 am - 8 pm CST
Fri 8 am - 5 pm CST
Sat 8 am - 12 pm CST

Chris J Spera
3201 LANE 64
FOWLER, CO 810399612

August 13, 2018

Re:
Current creditor: BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC
Original creditor: CAPITAL ONE RETAIL CARD SERVICES, INC.
Reference #: XXXXXXXXXXXX2802
Debt Balance: $12,169.75
D&A #: 5522968

To Whom It May Concern:

This letter is in response to your request for validation of debt that we received on 07/25/2018. We forwarded your request to our client and they have sent us the following documents:
• Charge-Off

If you have any questions, please contact our office.
Encl

Regards,
D & A Services

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector.

VOD2

124. D&A's August 13, 2018, letter enclosed a two page "Polaris Account Statement" purportedly "[i]ssued by HSBC".

14

125. The following is a true an accurate image of the first page of the two page Polaris Account Statement that was attached to D&A's August 13, 2018, letter:



126. The following is a true an accurate image of the second page of the two page Polaris Account Statement that was attached to D&A's August 13, 2018, letter:



127.    The HSBC issued Polaris Account Statement that D&A sent to Plaintiff on August 13, 2018, referred to a time period "[f]rom September 29, 2012 to October 20, 2012" (hereafter the "October Account Statement").

128.    The October Account Statement listed a "New Balance" of $8,976.36, a "Minimum Payment Due" of $1,421.00 and a "Payment Due Date" of 11/24/2012.

129.    The October Account Statement did not identify any "charge off" event.

130.    The October Account Statement does not represent a "charge off" of the Subject Debt.

131.    The October Account Statement provides a payment address of HSBC Retail Services PO BOX 60504 City of Industry CA 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.

132.    D&A's letter of August 13, 2018, did not properly validate the Subject Debt in response to Plaintiff's July 26, 2018, email which disputed the Subject Debt and requested validation of the of the Subject Debt.

133.    D&A's letter of August 13, 2018, did not in any way properly validate the Subject Debt by simply referring to a purported "Charge-Off" without any specified date.

134.    Further, D&A's letter of August 13, 2018, did not in any way properly validate the Subject Debt by simply attaching a two page Polaris Account Statement for the time-period of September 29, 2012 to October 30, 2012.

135.    D&A's letter of August 13, 2018, did not properly validate the Subject Debt by simply attaching a two page Polaris Account Statement for the time-period of September 29, 2012 to October 30, 2012, where the subject Polaris Account Statement did not contain any words reflecting a purported charge-off of the Subject Debt.

136.    D&A's letter of August 13, 2018, did not properly validate the Subject Debt by simply attaching a two page Polaris Account Statement for the time-period of

17

September 29, 2012 to October 30, 2012, where the subject Polaris Account Statement did not identify the date of any purported charge-off of the Subject Debt.

137. D&A's letter of August 13, 2018, did not properly validate the Subject Debt by because it failed to identify the date of purported charge-off of the Subject Debt.

138. D&A's letter of August 13, 2018, did not properly validate the Subject Debt by because it failed to identify the amount of purported charge-off of the Subject Debt.

139. The failure of D&A to identify the charge-off date of the Subject Debt prevented Plaintiff from being able to calculate the running of the applicable statute of limitation for time-barred debt.

140. The failure of D&A to identify the charge-off date of the Subject Debt prevented Plaintiff from easily ascertaining whether HSBC neglected to charge interest towards the Subject Debt *after* the unidentified charge-off date.

141. On August 13, 2018, Plaintiff responded to D&A's August 13, 2018, letter via email and stated:

> This is incomplete, you need to provide a signed copy of the agreement, you also need to provide the information requested about your company and if you are licensed in the state of Colorado. Also are records state an earlier date as the 1st cause of action, which would indicate the statu[t]e of limitations has lapsed. Please update your information and refrain from sending any further requests for payment.
> If unable to comply then contact Adam Shultz my attorney[.]

142. On August 17, 2018, D&A sent an email response to Plaintiff's August 13, 3018, email.

143. The August 17, 2018, email was sent from a "Client Services Supervisor" emailed Plaintiff from an "@dnasllc.com" email address.

144. The August 17, 2018, email said "Please see attached validation letter. Thanks".

145. The August 17, 2018, email did not identify D&A's Colorado Office.

146. Instead, D&A's August 17, 2018, email identified D&A Services and listed an address of 1400 E. Touhy Ave, Suite G2, Des Plaines, Illinois along with a telephone number associated with a 773 area code.

147. The letter attached to D&A's August 17, 2018, email was dated August 17, 2018.

148. The subject line of the letter attached to D&A's August 17, 2018, email included the following information:

> Re:
> Current creditor: BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC
> Original creditor: CAPITAL ONE RETAIL CARD SERVICES, INC.
> Reference #: XXXXXXXXXXX2802
> Debt Balance: $12,169.75
> D&A #: 5522968

149. The body of D&A's August 17, 2018, letter said the following:

> To Whom It May Concern:
>
> This letter is in response to your request for validation of debt that we received on 07/25/2018. We forwarded your request to our client and they have sent us the following documents:
> • Statements / Bill of Sale / Application
>
> If you have any questions, please contact our office.
> Encl
>
> Regards,
> D & A Services

150. D&A's August 17, 2018, letter identified D&A Services.

151. D&A's August 17, 2018, letter did not identify D&A's Colorado Office.

152. Instead, D&A's August 17, 2018, letter listed an address of 1400 E. Touhy Ave, Suite G2, Des Plaines, Illinois along with a telephone number associated with a 773 area code.

153. D&A's letter of August 17, 2018, did not properly validate the Subject Debt in response to Plaintiff's August 13, 2018, email which disputed the Subject Debt and requested validation of the of the Subject Debt.

154. D&A's letter of August 17, 2018, did not properly validate the Subject Debt by because it failed to identify the date of purported charge-off of the Subject Debt.

155. D&A's letter of August 17, 2018, did not properly validate the Subject Debt by because it failed to identify the amount of purported charge-off of the Subject Debt.

156. The failure of D&A to identify the charge-off date of the Subject Debt in its August 17, 2018, letter prevented Plaintiff from being able to calculate the running of the applicable statute of limitation for time-barred debt.

157. The failure of D&A to identify the charge-off date of the Subject Debt in its August 17, 2018, letter prevented Plaintiff from easily ascertaining whether HSBC neglected to charge interest towards the Subject Debt *after* the unidentified charge-off date.

**VIII.   Defendants Improperly Added Interest to the Subject Debt**

158. In a letter dated January 21, 2015, Professional Recovery Services, Inc., d/b/a ECHELON RECOVERY, INC. ("PRS") attempted to collect the Subject Debt on behalf of its identified "Client", The Bureaus, Inc.

159. The "RE" line of PRS's January 21, 2015, collection letter states:

> Re : Your account with our client
> **THE BUREAUS INC.**

160. PRS's January 21, 2015, collection letter identified "PORTFOLIO NO 15 LLC" as the ""CURRENT OWNER" of the subject debt and "CAPITAL ONE RETAIL CARD SERVICES, INC." as the "ORIGINAL CREDITOR."

161. PRS's January 21, 2015, collection letter identified "Account #: 12406214."

162. The Account Number referenced by PRS's collection letter was not the full or partial account number assigned by HSBC to the subject debt.

163.   PRS's January 21, 2015, collection letter states: "Professional Recovery Services, Inc. is the authorized representative for the above mentioned client."

164.   The collection letter that PRS sent to Plaintiff on or about January 21, 2015 on behalf of The Bureaus, Inc. and Portfolio No. 15 listed an "Amount Due" of $11,369.58.

165.   The collection letter that PRS sent to Plaintiff on or about January 21, 2015 on behalf of The Bureaus, Inc. and Portfolio No. 15 did not state that interest was accruing on the Subject Debt.

166.   PRS's January 21, 2015, collection letter states in part: "[O]ur client has authorized us to extent to you and offer to settle your account for less than the amount you owe.  Please contact us so that we may work with you to establish the terms of a settlement agreement which will be actable to both you and Bureaus Inc."

167.   PRS's January 21, 2015, collection letter can be read as follows "[The Bureaus Inc.] client has authorized us to extent to you and offer to settle your account for less than the amount you owe.  Please contact us so that we may work with you to establish the terms of a settlement agreement which will be actable to both you and [The Bureaus Inc.]."

168.   In a letter dated November 6, 2015, another debt collector, SENTRY CREDIT Inc., ("SCI"), attempted to collect the Subject Debt.

169.   SCI's November 6, 2015, collection letter listed the "Original Charge off Creditor" as "CAPITAL ONE RETAIL CARD SERVICES INC."

170.  SCI's November 6, 2015, collection letter identified BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC but did not indicate if BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC was the current creditor.

171. SCI's November 6, 2015, collection letter identified a purported principal amount of $8,976.36 and $3,087.32 in added interest, for a total balance of $12,063.68.

172. SCI's November 6, 2015, collection letter listed a "Current Interest Date" of 12.00%.

173. On November 20, 2015, SCI sent Plaintiff another letter in an attempt to collect the Subject Debt.

174. SCI's November 20, 2015, collection letter listed the "Original Charge off Creditor" as "CAPITAL ONE RETAIL CARD SERVICES INC."

175. SCI's November 20, 2015, collection letter identified BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC but did not indicate if BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC was the current creditor.

176. SCI's November 20, 2015, collection letter identified a purported principal amount of $8,976.36 and $3,128.62 in added interest, for a total balance of $12,104.98.

177. SCI's November 6, 2015, letter listed a "Current Interest Date" of 12.00%

178. D&A's August 13, 2018, letter to Plaintiff listed a "Debt Balance" of $12,189.75.

179. D&A's August 17, 2018, letter to Plaintiff listed a "Debt Balance" of $12,189.75.

180. The Collection Letter listed a "Current Balance" of $12,189.75.

181. The "Current Balance" included interest that D&A added to the Subject Debt by D&A.

182. Alternatively, the "Current Balance" included interest that The Bureaus added to the Subject Debt.

183. The "Current Balance" included interest that Portfolio No. 15 added to the Subject Debt.

22

184.    On information and belief, based upon public records filed in a recent civil action pending U.S. District Court, D&A used "Latitude", a debt collection software system.

185.    Latitude is a product of Global Software Services.

186.    If D&A utilized Latitude to collect the Subject Debt, Latitude has data fields which reflect the following data points:  "Original Balance"; "Interest Rate"; "Amount Paid"; "Last Int Date" and "Current Balance".

187.    In other litigation involving consumers, D&A's letters have identified the "[t]he total amount of the deb due as of charge-off", "[t]he total amount of interest accrued since charge-off", "[t]he total amount of interest charges or fees accrued since charge-off" and "[t]he total amount of payment and credits made on the debt since the charge-off".

188.    None of the above amounts were listed in the Collection Letter despite D&A having access to the raw data which would have allowed it to list these amounts relative to Plaintiff.

**VII.    Causes of Action**

189.    As set forth below, Plaintiff asserts the following Claims against the identified Defendants.

190.    Defendant D&A conducts substantial business in in this District through its transmission of debt collection letters to residents in this District and the state of Colorado.

191.    In the twelve (12) months prior to the filing of this lawsuit, D&A caused collection letters to be mailed to over forty (40) different consumers who reside in the States of Colorado and Illinois.

192.   In the twelve (12) months prior to the filing of this lawsuit, D&A caused collection letters to be mailed to over forty (40) different consumers who reside in the States of Colorado and Illinois where the original creditor was listed as Capital One Retail Card Services, Inc.

193.   In the twelve (12) months prior to the filing of this lawsuit, D&A caused collection letters to be mailed to over forty (40) different consumers who reside in the States of Colorado and Illinois where the debt referenced in each collection letter was owned by BICP-N15.

**Count 1 – Violations of Section 1692e(2)(A) of the FDCPA (Class Based)**

194.   Plaintiff incorporates the above allegations as if fully set forth for this Count.

195.   Section 1692e of the FDCPA states that "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

196.   Section 1692e(2)(A) of the FDCPA prohibits the "false representation of— (A) the character, amount, or legal status of any debt."

197.   D&A violated Section 1692e(2)(A) because the Collection Letter contained a false representation regarding the amount of the Subject Debt, because on information and belief, HSBC and/or Capital One voluntarily stopped adding interest to the Subject Debt on or about the date that it charged off the Subject Debt.

198.   Further, D&A violated Section 1692e(2)(A) because the Collection Letter lists "Current Balance" when D&A or the current creditor was no longer adding interest to the Subject Debt.

199.    The phrase "Current Balance", with the increasing amount of the Subject Debt after the Subject Debt was sold reasonably implied to an unsophisticated consumer that the Current Balance could increase.

200.    D&A's violation of the FDCPA as set forth above is typical and common of its conduct to more than forty residents of the states of Colorado and Illinois to the extent D&A sent similar form collection letters to residents of Colorado and Illinois where the letters improperly included interest where interest was waived by the original creditor.

WHEREFORE, Plaintiff CHRIS J. SPERA respectfully requests that this Honorable Court enter judgment in his favor and against Defendant D&A as follows:

a.   Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.   Awarding Plaintiff statutory damages in an amount to be determined at trial, for the underlying FDCPA violations;

c.   Pursuant to 15 U.S.C. § 1692k, the proposed class members are entitled to statutory damages;

d.   Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k; and

e.   Awarding any other relief as this Honorable Court deems just and appropriate.

**Count 2 – Violations of Section 1692e(10) of the FDCPA (Class Based)**

201.    Plaintiff incorporates the above allegations as if fully set forth for this Count.

202.    Section 1692e(10) of the FDCPA prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

203.    D&A violated Section 1692e(10) because the Collection Letter's demand for payment included interest that should never have been add to the Subject Debt, and

thus the amount listed on the Collection Letter constituted a false representation or means to collect or attempt to collect a debt.

204.    Further, D&A violated Section 1692e(10) because the Collection Letter lists "Current Balance" when D&A or the current creditor was no longer adding interest to the Subject Debt.

205.    The phrase "Current Balance", with the increasing amount of the Subject Debt after the Subject Debt was sold reasonably implied to an unsophisticated consumer that the Current Balance could increase.

206.    D&A's violation of the FDCPA as set forth above is typical and common of its conduct to more than forty residents of the states of Colorado and Illinois to the extent D&A sent similar form collection letters to residents of Colorado and Illinois where the letters improperly included interest where interest was waived by the original creditor.

WHEREFORE, Plaintiff CHRIS J. SPERA respectfully requests that this Honorable Court enter judgment in his favor and against Defendant D&A as follows:

  a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

  b. Awarding Plaintiff statutory damages in an amount to be determined at trial, for the underlying FDCPA violations;

  c. Pursuant to 15 U.S.C. § 1692k, the proposed class members are entitled to statutory damages;

  d. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k; and

  e. Awarding any other relief as this Honorable Court deems just and appropriate.

**Count 3 – Violations of Section 1692f(1) of the FDCPA (Class Based)**

207.    Plaintiff incorporates the above allegations as if fully set forth for this Count.

26

208.   Section 1692f of the FDCPA states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

209.   Section 1692f(1) of the FDCPA prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

210.   D&A violated Section 1692f(1) because the amount sought on the face of the Collection Letter unlawfully included post-charge off interest added by D&A and/or the non-original creditor, which constitutes an unfair and/or unconscionable means to collect or attempt to collect the Subject the Debt.

211.   D&A violated Section 1692f(1) because it and the current creditor was not authorized to add interest to the Subject Debt.

212.   Further, D&A violated Section 1692f because the Collection Letter lists "Current Balance" when D&A or the current creditor was no longer adding interest to the Subject Debt.

213.   The phrase "Current Balance", with the increasing amount of the Subject Debt after the Subject Debt was sold reasonably implied to an unsophisticated consumer that the Current Balance could increase.

214.   D&A's violation of the FDCPA as set forth above is typical and common of its conduct to more than forty residents of the states of Colorado and Illinois to the extent D&A sent similar form collection letters to residents of Colorado and Illinois where the letters improperly included interest where interest was waived by the original creditor.

WHEREFORE, Plaintiff CHRIS J. SPERA respectfully requests that this Honorable Court enter judgment in his favor and against Defendant D&A as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff statutory damages in an amount to be determined at trial, for the underlying FDCPA violations;

c. Pursuant to 15 U.S.C. § 1692k, the proposed class members are entitled to statutory damages;

d. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

**Count 4 – Violations of Sections 1692e and f of the FDCPA (Individual Claim)**

215.    Plaintiff incorporates the above allegations as if fully set forth for this Count.

216.    Section 1692e of the FDCPA states that "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

217.    D&A's letter Plaintiff on August 13, 2018, was a false, deceptive, or misleading representation or means in connection with the collection of the Subject Debt because it failed to properly validate the Subject Debt for the reasons asserted in Paragraphs 122-140.

218.    D&A's letter Plaintiff on August 17, 2018, was false, deceptive, or misleading representation or means in connection with the collection of Subject Debt because it failed to properly validate the Subject Debt for the reasons asserted in Paragraphs 153-57.

219.    Section 1692e(2)(A) of the FDCPA prohibits the "false representation of— (A) the character, amount, or legal status of any debt."

220. D&A's letter Plaintiff on August 13, 2018, was a false representation of the character, amount, or legal status of the Subject Debt because it failed to properly validate the Subject Debt for the reasons asserted in Paragraphs 122-140.

221. D&A's letter Plaintiff on August 17, 2018, was a false representation of the character, amount, or legal status of the Subject Debt because it failed to properly validate the Subject Debt for the reasons asserted in Paragraphs 153-57.

222. Section 1692e(10) of the FDCPA prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

223. D&A's letter Plaintiff on August 13, 2018, was false representation or deceptive means to collect or attempt to collect the Subject Debt because it failed to properly validate the Subject Debt for the reasons asserted in Paragraphs 122-140.

224. D&A's letter Plaintiff on August 17, 2018, was false representation or deceptive means to collect or attempt to collect the Subject Debt because it failed to properly validate the Subject Debt for the reasons asserted in Paragraphs 153-57.

225. D&A's letter Plaintiff on August 13, 2018, was unfair or unconscionable means to collect or attempt to collect the Subject Debt because it failed to properly validate the Subject Debt for the reasons asserted in Paragraphs 122-140.

226. D&A's letter Plaintiff on August 17, 2018, was unfair or unconscionable means to collect or attempt to collect the Subject Debt because it failed to properly validate the Subject Debt for the reasons asserted in Paragraphs 153-57.

WHEREFORE, Plaintiff CHRIS J. SPERA respectfully requests that this Honorable Court enter judgment in his favor and against Defendant D&A as follows:

      a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff statutory damages in an amount to be determined at trial, for the underlying FDCPA violations;

c. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

**Count 5 – Violations of Section 1692c(1) of the FDCPA (Individual Claim)**

227. Plaintiff incorporates the above allegations as if fully set forth for this Count.

228. Section 1692c(1) of the FDCPA states that "[w]ithout the prior consent of the consumer . . a debt collector may not communicate with a consumer with the collect of any debt (1) at any time unusual . . . known to be inconvenient to the consumer."

229. Section 1692c(1) of the FDCPA further states that "[i]n the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location[.]"

230. D&A's email communication to Plaintiff on August 13, 2018, occurred before 8 o'clock antemeridian at Plaintiff's location in Fowler, Colorado.

WHEREFORE, Plaintiff CHRIS J. SPERA respectfully requests that this Honorable Court enter judgment in his favor and against Defendant D&A as follows:

e. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

f. Awarding Plaintiff statutory damages in an amount to be determined at trial, for the underlying FDCPA violations;

g. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k; and

h. Awarding any other relief as this Honorable Court deems just and appropriate.

**Count 6 –Violations Colorado Fair Debt Collection Practices Act (Class Action)**

231.    Plaintiff incorporates the above allegations as if fully set forth for this Count.

232.    Colorado Fair Debt Collection Practices Act, Colo. Rev. Stat. § 12-14-101, *et seq.*, ("CFDCPA") provides the every "licensee shall: . . . (b)(I)(B) Notify, in each written communication, the consumer from whom the agency is attempting to collect a debt of the address and telephone number of the local office required by this subsection (1)(b)(I)."  See also, 5-16-123, "Duties of collection agencies."

233.    D&A's e-mail and its attached letter of August 13, 2018, did not list D&A's business address in the State of Colorado and did not list the telephone number of any Colorado based collection office.

234.    D&A's e-mail and its attached letter of August 17, 2018, did not list D&A's business address in the State of Colorado and did not list the telephone number of any Colorado based collection office.

235.    Section 5-16-107(1) of the CFDCPA makes it unlawful for a "debt collector or collection agency . . . [to] use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

236.    Specifically, D&A violated Section 5-16-107(b)(I) which prohibits "[t]he false representation of: (I)  The character, amount, or legal status of any debt[.]"

237.    D&A's letters of July 2, 2018, August 13, 2018, and August 17, 2018, violated Section 5-16-107(b)(I) of the CFDCPA because they sought to collect added interest which was not permitted by law or by the actions of the original creditors.

238.    D&A also violated Section 5-16-107(k) of the CFDCPA which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."

239. D&A's letters of July 2, 2018, August 13, 2018, and August 17, 2018, violated Section 5-16-107(k) of the CFDCPA because they sought to collect added interest which was not permitted by law or by the actions of the original creditors.

240. Section 5-16-108(1) of the CFDCPA states that "[a] debt collector or collection agency shall not use unfair or unconscionable means to collect or attempt to collect any debt . . ." and specifically prohibits:

> a. The collection of any amount, including any interest, fee, charge, or expense incidental to the principal obligation, unless the amount is expressly authorized by the agreement creating the debt or permitted by law[.]

241. D&A's letters of July 2, 2018, August 13, 2018, and August 17, 2018, violated Section 5-16-108(1)(a) of the CFDCPA because they sought to collect added interest which was not permitted by law or by the actions of the original creditors.

242. D&A's letters of July 2, 2018, August 13, 2018, and August 17, 2018, violated Section 5-16-107(1) of the CFDCPA makes it unlawful for a "debt collector or collection agency . . . [to] use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

243. D&A's letters of July 2, 2018, August 13, 2018, and August 17, 2018, violated Section 5-16-107(1) of the CFDCPA because they sought to collect added interest which was not permitted by law or by the actions of the original creditors.

244. D&A's violation of the CFDCPA as set forth above is typical and common of its conduct to more than forty residents of the states of Colorado to the extent D&A sent similar form collection letters to residents of Colorado where the letters improperly included interest where interest was waived by the original creditor.

WHEREFORE, Plaintiff CHRIS J. SPERA respectfully requests that this Honorable Court enter judgment in his favor and against Defendant D&A as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff and the class members statutory damages in an amount to be determined at trial, for the underlying CFDCPA violations;

c. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

**Count 7 –Unlawful Interest in Violation of Section 5-12-1010 (Class Action)**

245. Plaintiff incorporates the above allegations as if fully set forth for this Count.

246. Colorado Law, Section 5-12-1010, limits interest rate to no more than 8% where there is no agreement of provision of law for a different rate.

247. As set forth above, the original creditor(s) waived interest as to the Subject Debt.

248. Accordingly, as a matter of law, no interest could be added to the Subject Debt by any subsequent creditor.

249. However, The Bureaus added interest to the Subject Debt at a rate of 12% and in doing so violated Section 5-12-1010.

250. In doing so, The Bureaus attempted to collect unlawful interest and violated Section 5-12-1010.

251. Alternatively, BIG III added interest to the Subject Debt at a rate of 12% and in doing so violated Section 5-12-1010. In doing so, BIG III attempted to collect unlawful interest and violated Section 5-12-1010.

252. Alternatively, PORTFOLIO NO 15 LLC added interest to the Subject Debt at a rate of 12% and in doing so violated Section 5-12-1010. In doing so, PORTFOLIO NO 15 LLC attempted to collect unlawful interest and violated Section 5-12-1010.

253. D&A also added interest to the Subject Debt at a rate of 12% and in doing so violated Section 5-12-1010.

254. In doing so, D&A attempted to collect unlawful interest and violated Section 5-12-1010.

255. Defendants' violations of Section 5-12-1010 as set forth above is typical and common of its conduct to more than forty residents of the states of Colorado to the extent D&A sent similar form collection letters to residents of Colorado where the letters improperly included interest where interest was waived by the original creditor and the interest added by Defendants exceeded 8%.

256. Defendants' violations of Section 5-12-1010 violate Sections CFDCPA.

WHEREFORE, Plaintiff CHRIS J. SPERA respectfully requests that this Honorable Court enter judgment in his favor and against Defendants D&A, PORTFOLIO NO 15 LLC, BIG III and The Bureaus as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff and the class members statutory damages in an amount to be determined at trial, for the underlying CFDCPA violations;

c. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## IX. Additional Class Action Based Allegations

257. Plaintiff brings his class action claims on behalf of Colorado and Illinois residents for a time period of one year prior to the filing of this action.

258. Class members can be identified by Defendants' records.

259. The proposed classes are so numerous that joinder of all individual members in one action would be impracticable, given the expected Class size and modest value of individual claims.

260. This action should be maintained as a class action because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the Class.

261. Plaintiff's claims are typical of the claims of the proposed class members, claims all arise from the same operative facts and are based on the same legal causes of action.

262. Common questions predominate over any potential individual issues.

263. There are common questions of law and fact affecting members of the Classes, which common questions predominate over questions that may affect individual members.

264. These common questions include, but are not limited to:

    a. Whether D&A mailed form letters to persons within the State of Illinois and Colorado seeking to collect interest where interest was waived by HSBC;

    b. Whether D&A's use of form letters violated the FDCPA because the added interest was waived by HSBC and otherwise improperly added by D&A or a subsequent or current creditor;

    c. Whether D&A mailed form letters to persons within the State of Illinois and Colorado seeking to collect interest where interest was waived by Capital One;

    d. Whether D&A's use of form letters violated the FDCPA because the added interest was waived by Capital One and otherwise improperly added by D&A or a subsequent or current creditor;

    e. Whether D&A used a stock validation letter in response to validation disputes from residents of the States of Illinois and Colorado;

       f.      Whether D&A's use of stock validation letter letters violated the FDCPA;

       g.      Whether D&A mailed form letters to persons within the state of Colorado where the letters failed to list or otherwise identify D&A's Colorado office;

       h.      Whether D&A, PORTFOLIO NO 15 LLC, BIG III and The Bureaus unlawfully added interest to the Subject Debt.

265.    Common questions of proof predominate over any potential individual issues.

266.    Plaintiff will fairly and adequately represent the Class members.

267.    Plaintiff has no interests that conflict with the interests of Class members.

268.    Plaintiff has retained counsel experienced in handling consumer class actions.

269.    Plaintiff's counsel, James C. Vlahakis, is an experienced consumer class action litigator who has defended over a hundred consumer-based claims. And in particular:

       a.   Mr. Vlahakis began defending consumer class actions in 1998 and continued to do so as a defense attorney through 2017.

       b.   Mr. Vlahakis has litigated over a hundred consumer-based causes of actions, including, but no limited to dozens of FDCPA based putative class actions.

       c.   Mr. Vlahakis has also litigated dozens of putative class actions brought pursuant to the Telephone Consumer Protection Act ("TCPA") in both federal and state court.

       d.   In conjunction with counsel for the class members, Mr. Vlahakis has obtained Court approval of FDCPA and TCPA class class-bases settlements. *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar ATDS based settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar ATDS wrong party settlement); *INSPE Associates v. CSL Biotherapies, Inc.* (N.D. Ill.) ($3.5 million fax based settlement).

       e.   Mr. Vlahakis has litigated and defeated TCPA based class certification motions. *See, e.g., Jamison v. First Credit Services, Inc.*

290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013). *See also*, *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012).

270. Neither Plaintiff nor his counsel has any interests that might cause them not to pursue these claims vigorously.

271. A class action is an appropriate method for the fair and efficient adjudication of this controversy, and superior to other available methods for the fair and efficient adjudication of this controversy.

272. Injunctive relief in the form of disgorgement of unlawful payments received by Defendants can be accomplished on a classwide basis.

273. The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, as well as the absence of a fee shifting mechanism.

**Plaintiff demands trial by jury.**

Respectfully Submitted,

/s/James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
(630) 575-8181
jvlahakis@sulaimanlaw.com